# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

    v.                        Case No. 20-CR-9

**ANTHONY CROSS,**

    **Defendant.**

## ORDER

On January 28, 2020, the court granted the government's motion for a protective order. (ECF No. 13.) Defendant Anthony Cross now moves to vacate the protective order. (ECF No. 38.)

Cross states, and the government does not dispute, that the discovery "falls into three categories of material: (1) limited materials from an historical investigation based on a 2017 wiretap of a third-party's telephone; (2) a 2019 robbery investigation which included a state search warrant for a duplex where the target (Ricky Austin) of the robbery investigation resided and which duplex was owned by Mr. Cross's mother (this was not Mr. Cross's residence); and (3) an alleged series of controlled buys conducted by

a single informant in late 2019 and early 2020, which led to a federal search warrant of Mr. Cross's residence in January 2020 and Mr. Cross's arrest." (ECF No. 38 at 2-3.)

Cross argues that "[t]he protective order is overbroad and is not supported by good cause." (ECF No. 38 at 1.) Specifically, he argues that,

> [t]here is nothing in the motion tailored to Mr. Cross or this case. The government's motion fails to disclose what, if any, portion of the discovery contains the names of confidential informants or their families.…
>
> The government's motion indicates that it would mask the identity of any informants, their addresses, telephone numbers, and the like, and that is exactly what they have done in this case. Consequently, the very information the government says needs protection arguably has already been protected via redaction and masking.

(*Id.* at 6 (internal footnote omitted).) Cross asserts that "there do not appear to be any photographs or video surveillance which reveal the [confidential informant's] identity." (*Id.* at 3.)

Cross was released from custody on April 8, 2020 (ECF No. 35), and further argues that, because of the current global pandemic and Safer at Home order, he is unable to meet with his counsel in person to go over discovery materials and will be unable to do so until the order is lifted[1] and social distancing practices lessen, especially because

---

[1] On May 13, 2020, the Wisconsin Supreme Court overturned the "Safer at Home" order, allowing some businesses across the state to open immediately. Cross currently resides in Milwaukee, and his counsel's office is in Mequon. However, the City of Milwaukee issued a local order, and Mequon still has some requirements in place. *See* "Here's which Wisconsin counties and cities have continued or started new stay-at-home orders," May 13, 2020, available at https://www.jsonline.com/story/news/local/wisconsin/2020/05/13/wisconsin-stay-home-order-not-over-dane-brown-counties-milwaukee-city-racine/5188700002/ (last visited May 18, 2020).

(according to Cross) he is particularly susceptible to contracting COVID-19. (ECF No. 38 at 3.)

In response the government argues that the protective order is necessary to protect the identity of the confidential informant (CI) and is not overbroad. (ECF No. 41 at 4-5, 9-10.) Although the CI's name is not included in the documents, the government argues that

> identity remains obvious given the nature of an informant's dealings with a drug-trafficker such as the defendant. The concerns are elevated here because the CI's voice is clearly depicted in the audio recordings, and the CI's face is clearly depicted in the video recordings. Materials need not specify a CI's name for them to be used to confront a cooperator and/or intimate a cooperator by disseminating and/or posting it to social media.

(*Id.* at 5.) The government objects to Cross's proposal to modify the order to allow Cross to have the materials and to mark his copies with a special bates stamp. (*Id.*) The government argues that it "is trying to *prevent* the dissemination and any confrontation, intimidation, and/or threats the dissemination may cause in the first instance" (*id.* (emphasis in original)), and that it is concerned about Cross sharing the information online because "[e]ven one post to social media or a simple disclosure to one individual could very easily result in widespread dissemination…" (*id.* at 6).

The government also argues the protective order is necessary to protect Title III wiretap interceptions, as "the discovery includes the affidavits in support of the interception of third-party telephones (not the defendant's telephone), the corresponding applications of the government and orders of the court, the court authorized intercepted

3

communications with the defendant, and transcripts of those calls." (ECF No. 41 at 7.) The government notes that "[t]he Title III wiretap discovery … was the subject of a Protective Order in *United States v. Gomez, et. al.*, Case No. 17-CR-113 .…" (*Id.* at 2.)

In response to Cross's argument about access to his counsel and the material during the current health crisis, the government argues that, "[b]ecause [it] provided discovery to the institution at which he was detained [from January to beginning of April], [Cross] having likely seen almost all of the discovery would provide a solid frame of reference, until social distancing requirements begin to be lifted." (ECF No. 41 at 11 (footnote omitted).) Finally, the government concedes that discovery material relating to the February 2019 robbery investigation "can be exempted from the Protective Order." (*Id.* at 9.)

In reply Cross expands upon the "good cause" standard and the wiretap evidence. He argues that

> [t]he government makes no attempt whatsoever to tie its informant safety concerns to *this case or this defendant*. There is no allegation in the indictment or in its written response to the motion regarding violence, firearms, witness tampering, obstruction, or anything of the sort. The government goes on at some length about the controlled buys, the informant's "historical information" and reports of debriefings and controlled purchases, and apparently is concerned that "details of controlled purchases … are ones that defendants remember." And the government concedes that the informant's name and identifying information are absent from the discovery, and that only his "face and voice" are disclosed.
>
> **But all of that says nothing more than that there is an informant in the case**. It falls short of the specificity that must be demonstrated as to *this* case

>and *this* defendant before good cause will justify the restrictions on discovery.

(ECF No. 42 at 5 (emphasis in original).) In further discussing the wiretap evidence, Cross argues that "nothing in the wiretap statutes mandate the kind of Rule 16(d) limitations found in the protective order here: namely, prohibiting the defendant from possessing these materials." (*Id.* at 9.) And even though the Title III materials had been subject to a protective order in an earlier case, Cross argues that, "in stark contrast to this case, *Gomez* apparently involves numerous threats of violence, kidnaping [sic], beatings, and torture, including to obtain information about the drug organization." (*Id.* at 10.) But Cross states that, "if the government believes a protective order that memorializes the prohibition against publicly filing or disseminating Title III information is warranted, the defense has no objection." (*Id.*)

"At any time the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief." Fed. R. Crim. P. 16(d)(1). The court agrees with Cross that the protective order is overbroad and otherwise unsupported by good cause. Although the government argues that the voice and face of the CI is readily identifiable, it has not shown any reason to fear that Cross will disclose the identity of the CI or that dissemination of the discovery to Cross poses any threat to the CI. As Cross argues, he was charged with drug trafficking, not conspiracy, and even though Cross had access to the discovery while he was in custody from January to April 2020, there is no

5

allegation that he attempted to disseminate the information or threaten the CI. (ECF No. 42 at 6-7.) Without these particularized arguments, the protective order is too broad.

Regarding the wiretap discovery, Cross states that, if the government believes it is necessary, he would not object to "a protective order that memorializes the prohibition against publicly filing or disseminating Title III information." (ECF No. 42 at 10.) If the government wishes for such an order, it can file a motion. Or if there is something specific that the government believes Cross should not have access to and there is a good reason for denying him access, it can similarly file a motion to limit his access. But the court does not believe there is good cause to restrict the entirety of discovery with an overbroad protective order.

**IT IS THEREFORE ORDERED** that Cross's motion to vacate the protective order (ECF No. 38) is **GRANTED**.

Dated at Milwaukee, Wisconsin this 19th day of May, 2020.

WILLIAM E. DUFFIN
U.S. Magistrate Judge